**STATE of Missouri, Respondent,**

v.

**Thomas J. SMITH, Appellant.**

**STATE of Missouri, Plaintiff,**

v.

**Thomas J. SMITH, Defendant.**

**No. WD 48237.**

Missouri Court of Appeals, Western District.

March 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 12, 1995.

Application to Transfer Denied May 30, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

Emmett D. Queener, Office of the State Public Defender, Columbia, for appellant.

Before LOWENSTEIN, P.J., and SMART and ELLIS, JJ.

LOWENSTEIN, Presiding Judge.

The appellant, Thomas Smith, after a jury trial, was found guilty of: second degree burglary, sentenced as a class x offender to fifteen years; stealing, as a prior and persistent offender, sentenced to fifteen years concurrent to the burglary conviction; carrying a concealed weapon, § 571.030.1(1), RSMo 1993, and sentenced to ten years as a prior and persistent offender, running consecutive to the first two sentences. Smith's appeal of the denial of his motion for post conviction relief is consolidated with this appeal.

Just before 4:00 a.m. on January 24, 1993, a man broke into a convenience store and stole cigarettes, liquor and a ceramic unicorn rose statue. A surveillance camera in the store showed the culprit was a man, braided hair hanging to his eyebrows, wearing a dark sweatshirt over a light hooded sweatshirt, sweatpants, and white tennis shoes with black liners. The man's face was blurry on the film, as were the photographs made from the film; however, a Howard County deputy recognized the culprit as Smith. Smith's next door neighbor, Sheriff Yeager, also identified the man as Smith. Yeager testified he had seen Smith's girlfriend, now his wife, braiding and putting beads in Smith's hair several days prior to the break in. An hour and a half prior to the burglary, a Boonville police officer had given Smith a traffic ticket. Smith was wearing the same outfit and had the same hairstyle as the man on the film.

Several hours later, deputies went to the residence of Smith and his girlfriend. Smith was wearing the same outfit as shown on the surveillance film, and the same outfit he wore

during the time of his earlier traffic ticket. A consensual search of the house netted the statue taken from the store. The car was searched by consent—the officers found a knife in the front console, and a "keyhole saw" stuck between the console and the driver's seat. The trial court dismissed a separate concealed weapon charge on the knife, so the submission here was only that Smith "knowingly carried concealed upon or about his person a 6⅛ inch pointed saw blade, a weapon readily capable of lethal use...."

■ Smith's first point on his direct appeal questions the sufficiency of the evidence to have submitted the weapons charge under § 571.030.1(1), which states: "Carries concealed upon or about his person a knife ... or any other weapon readily capable of lethal use." The issue presented is whether the sawblade instrument, used for cutting out door locks, is a knife or weapon readily capable of lethal use. The sawblade has a handle and a six and one-eighth inch pointed, serrated blade. The prosecution first contends the sawblade is a dagger and, therefore, fits under the statutory definition of § 571.010(9): "Knife means any dagger, dirk, stiletto, or a bladed hand instrument that is readily capable of inflicting serious injury or death by cutting or stabbing a person." Reliance on *State v. Martin*, 633 S.W.2d 80 (Mo.1982), by the prosecutor is misplaced. In *Martin*, the defendant entered the victim's apartment armed with a knife which had a blade of seven to eight inches long, and raped the victim. In discussion of the forcible rape charge, the Court held the knife qualified as a dagger under § 571.010(9). It is difficult to see how *Martin* supports the submission here of a concealed weapons charge, where the facts show a work tool was found the **next day** in a car following a late night break in and burglary. The court rules the instrument in the case at bar was not a statutorily defined knife.

■ The remaining question is whether this is a weapon capable of lethal use. Section 571.030.1(1). The prosecution relies on another case involving a forcible rape, *State v. Baldwin*, 571 S.W.2d 236 (Mo. banc 1978), where the defendant was, within a short time following the rape, found with a steak knife in his pocket, and was also charged with carrying a concealed weapon. The Court pronounced that all the circumstances in evidence, including the "nature of the knife," and "the time and place the defendant was carrying the concealed steak knife and what had occurred a short time earlier," supported a finding the knife was a dangerous weapon, even though the instrument was normally used for "peaceful purposes," and was a "useful utensil." *Id.* 241–42.

The surrounding facts and circumstances in this case are more similar to those in *State v. Luker*, 873 S.W.2d 316 (Mo.App.1994). In *Luker*, the charge was under § 571.030.1. The defendant, after a disturbance call from a neighbor (a verbal altercation not involving a weapon), was taken to the police station. During an inventory search, police found a scratch awl, which is used for sheet metal work, in his back pocket. The court's analysis harkened to *State v. Purlee*, 839 S.W.2d 584 (Mo. banc 1992), in that the instrument must be a functional lethal weapon, and that even though not defined in § 571.030, must still be a "weapon," capable of use as in offensive or defensive combat. *Id.* at 318. The Southern District of this court, in reversing the conviction, held the awl in question resembled a short ice pick, could be used as a lethal weapon, but was not a lethal weapon per se, was a useful utensil normally used for peaceable purposes and, under the circumstances, was not a weapon readily capable of lethal use. There is no evidence nor inference from the evidence, showing the saw blade was in any way connected with, or about to be used as, an offensive or defensive weapon. *Id.* at 320. *See also: Independence v. Young*, 760 S.W.2d 909 (Mo.App.1988).

Under the circumstances of this case, the object found in the defendant's car was not a knife, and was not, per se, a weapon readily capable of lethal use. The judgment of conviction on the charge for a concealed weapon is reversed and the defendant Smith is discharged on that count.

■ The other point on direct appeal seeks plain error review for the introduction, without sufficient foundation, of the photographs made from the video in the burgled premises. A detailed analysis is unnecessary, and the point denied, because the de-

fendant makes no showing of a manifest injustice or a miscarriage of justice resulting from this action. Rule 30.20.

■ Smith's appeal under Rule 29.15 is limited to questioning the motion court's not issuing specific findings and conclusions in its denial of his pro se motion. The pro se motion alleged ineffective assistance in selecting the jury and handling prosecutorial misconduct. The amended motion added the claim that Smith had been improperly sentenced as a class x offender on the stealing and weapon convictions. With the prosecutor's cooperation, he was granted relief from sentencing. Since Smith put on no evidence on the grounds listed in the pro se motion, the court did not err in failing to make detailed findings and conclusions on those grounds. *State v. Hunter,* 840 S.W.2d 850 (Mo. banc 1992).

The judgment of conviction on the weapon charge is reversed and the appellant discharged on that count. In all other respects, the direct appeal is affirmed. The judgment denying post conviction relief is affirmed.

All concur.