STATE of Missouri, Plaintiff–
Respondent

v.

Christopher P. MACE, Defendant–
Appellant.

No. 27220.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 16, 2006.

Kent Denzel, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cecily L. Daller, Asst. Atty. Gen., Jefferson City, for Respondent.

PAUL McGHEE, Senior Judge.

Christopher P. Mace (defendant) was charged with the class B felony of possession of a controlled substance with intent to distribute in violation of § 195.211,[1] and with the class D felony of unlawful use of a weapon in violation of § 571.030.1(1). Following a bench trial, the court found him guilty of misdemeanor possession of marijuana on Count I of the information and guilty of unlawful use of a weapon on Count II. The court sentenced him to the county jail for one year on the marijuana count and to a term of two years in the Department of Corrections on the unlawful use of a weapon count. The court ordered the sentences to run concurrently and suspended execution of the sentences, placing defendant on supervised probation for a term of five years without differentiating between the two sentences.[2]

Defendant appeals only from the unlawful use of a weapon sentence and judgment. We reverse and remand to the trial court with directions to discharge defendant on the unlawful use of a weapon count.

At an undisclosed time on June 22, 2004, Branson Police Officer Michael Staworski went to a Wal–Mart parking lot to investigate a report of possible drug activity involving a Ford Tempo automobile and a Chevrolet Malibu automobile. He located both vehicles on the parking lot and saw six young men around the vehicles. One of them was defendant, who told the officer that he was the owner and driver of the Malibu. At least one other man identified himself as having been in defendant's vehicle. After obtaining permission from defendant, Staworski searched the trunk and interior of the Malibu and found nothing unusual. In a subsequent discussion with defendant about drugs, defendant asked, "Do you mean the stuff in the center console?" He then stated, "It's just for personal use."

Upon hearing this, the officer searched the Malibu again and found marijuana on the console, and $85.00 in cash, a scale, and a plastic sandwich bag containing marijuana in the console. In again searching the trunk, the officer found 217 plastic sandwich bags in a shoe box. Defendant had $353.00 in his pocket, but he had no drugs on his person. There were no drugs in the Tempo, nor did any of the other men have drugs.

During the second search of the Malibu, Staworski found an object the trial court described as resembling a miniature baseball bat lying uncovered on the right rear floorboard. Imprinted on it are the words, "Tire Thumper," and that it was manufactured by an Arkansas company. Stawor-

1. References to statutes are to RSMo Cum. Supp.2003.

2. Although defendant does not appeal the marijuana conviction, he cites § 559.016.1(2), which limits the term of probation for a misdemeanor to a maximum of two years. He did not challenge the length of the term of probation in the trial court.

ski believed tire thumpers are used by truckers to test their truck tires.

The front bucket seats of the Malibu were reclined back farther than is customary, but this is common among young drivers according to Staworski. The reclined seats obscured his vision and he had not seen the object from outside the vehicle. He saw it only after he moved the driver's seat forward to check under the seat, but had he stuck his head inside the car, he could have seen it before he moved the seat. The discovery of the object led to the charge of unlawful use of a weapon by knowingly carrying "concealed upon or about his person a wooden club with a metal rod in the center, which weapon was readily capable of lethal use."

In his first point, defendant contends that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because the evidence was insufficient to establish beyond a reasonable doubt that the tire thumper found on the back floorboard of his automobile was a weapon proscribed by § 571.030.1. For his second point, defendant asserts that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because the evidence was insufficient to establish beyond a reasonable doubt that he *knowingly* possessed or carried the tire thumper upon or about his person. (Emphasis added.) There is no contention that the tire thumper was not concealed.

The same standard of review applies to criminal cases tried by the court without a jury as in cases tried by a jury. *State v. Wirth,* 192 S.W.3d 480, 481 (Mo.App.2006), *citing State v. Hudson,* 154 S.W.3d 426, 429 (Mo.App.2005).

In a court-tried case, the sufficiency of the evidence is determined by the same standard as in a jury-tried case, and that is whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt. *State v. Downen,* 3 S.W.3d 434, 435 (Mo. App. S.D.1999). In determining whether or not there is evidence sufficient to support a finding of guilt, an appellate court may not weigh the evidence, but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and all contrary evidence and inferences are ignored. Id.

*State v. Johnson,* 81 S.W.3d 212, 215 (Mo. App.2002).

■ " 'Our standard of review is whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Smith,* 185 S.W.3d 747, 758 (Mo.App.2006), *quoting State v. Wright,* 998 S.W.2d 78, 81 (Mo.App.1999); *see also, State v. Fields,* 181 S.W.3d 252, 254 (Mo.App.2006). "The court must examine the elements of the crime and consider each in turn; reviewing the evidence in the light most favorable to the judgment, disregarding any contrary evidence, and granting the State all reasonable inferences from the evidence." *State v. Smith, supra; State v. Moore,* 194 S.W.3d 387, 389 (Mo.App.2006). However, the court may not supply missing evidence or give the state the benefit of unreasonable, speculative, or forced inferences. *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc), *cert. denied,* 534 U.S. 1030, 122 S.Ct. 567, 151 L.Ed.2d 440 (2001).

Section 571.030.1 provides in relevant part:

A person commits the crime of unlawful use of weapons if he or she knowingly:

(1) Carries concealed upon or about his or her person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use[.]

The essential elements of the offense are the knowing concealment and accessibility of a functional lethal weapon. *State v. Purlee*, 839 S.W.2d 584, 590 (Mo. banc 1992); *State v. Howard*, 973 S.W.2d 902, 906 (Mo.App.1998). A weapon is accessible if it is in such close proximity to the accused as to be within his easy reach and convenient control. Id. Additionally, the test of concealment is whether a weapon is so carried as not to be discernible by ordinary observation. Id. at 906–07; *City of Bolivar v. Hagar*, 950 S.W.2d 948, 949 (Mo.App.1997). A weapon is not concealed simply because it is not discernible from a single vantage point if it is clearly discernible from other positions. However, it may be concealed where it is discernible only from one particular vantage point. *State v. Purlee, supra; State v. Rowe*, 67 S.W.3d 649, 657 (Mo.App.2002); *State v. Howard, supra*, at 907.

Section 571.030.1 does not define "weapon," and the determination of whether an object other than a knife, a firearm, or a blackjack is a weapon within the meaning of the statute is dependent on a variety of factors. *State v. Foster*, 930 S.W.2d 62, 64 (Mo.App.1996),[3] *citing State v. Baldwin*, 571 S.W.2d 236, 241 (Mo. banc 1978). Among the factors to be considered are: (1) the nature of the instrument itself; (2) the circumstances under which it is carried, including the time, place, and situation in which the defendant is found in possession; (3) the manner in which it is carried; (4) the particular person carrying it; and (5) perhaps other factors such as possible peaceful uses therefor which the possessor might have. *State v. Foster, supra*.

It is not sufficient that the object be readily capable of lethal use; it must also be a "weapon." *State v. Luker*, 873 S.W.2d 316, 318 (Mo.App.1994). Webster's Third New International Dictionary defines "weapon" as "an instrument of offensive or defensive combat." Id. Relying on *State v. Baldwin, supra*, and *City of Independence v. Young*, 760 S.W.2d 909 (Mo. App.1988), this court held in *Luker* that a scratch awl[4] the defendant was carrying concealed in his back pocket while engaged in an altercation with a neighbor was not a weapon readily capable of lethal use, despite the testimony of an arresting officer that it could be used as a weapon and that he had investigated homicides where victims had been killed by instruments similar to the scratch awl. *Luker*, 873 S.W.2d at 318.

In *State v. Smith*, 897 S.W.2d 87 (Mo. App.1995), the defendant had burglarized a store late at night and was photographed by a surveillance camera. This led to his identification, and the police went to his residence and searched his automobile. They found between the driver's seat and the console a keyhole saw that was a saw blade with a handle and a six and one-eighth-inch pointed, serrated blade. Relying on *Luker*, the court held that the saw blade was not a weapon under § 571.030 because there was no evidence, nor an inference from the evidence, showing that the saw blade was in any way connected with, or about to be used as, an offensive or defensive weapon. *Smith, supra*, at 89.

The tire thumper found in defendant's vehicle has a peaceful use, and there is no evidence of an attempt to conceal it other than the front seats being reclined. There is no evidence of quarrels, fights, or

---

**3.** In *Foster*, the concealed object was a "tire knocker," but the court did not reach the issue of whether it was a weapon.

**4.** The scratch awl was described as a manufactured tool closely resembling a short ice pick. 873 S.W.2d at 318.

disturbances at the scene; neither is there evidence that defendant threatened anyone or brandished the tire thumper, or that he attempted to use it for any purpose. The circumstance of young men standing around their automobiles in a Wal–Mart parking lot does not establish intent by defendant to possess the tire thumper as an "instrument of offensive or defensive combat." There is no evidence of defendant's occupation, or whether he did or did not have a peaceful use for the tire thumper; neither is there any evidence of defendant's character other than he and others were on a parking lot in the vicinity of his vehicle in which there was marijuana, a scale, and sandwich bags.

The state argues that it is reasonable to infer that defendant carried the tire thumper only for use as a weapon because he was "obviously involved in the drug culture." This is a speculative inference which is unsupported by the evidence and it does not supply proof that the tire thumper was in defendant's automobile as "an instrument of offensive or defensive combat."

After reviewing the evidence in light of the factors enunciated in *Baldwin* and *Foster*, and the precedent of *Luker*, we hold that the evidence is insufficient to support a finding in the circumstances of this case that the tire thumper is a "weapon" proscribed by § 571.030.1. This holding is dispositive of the appeal, and we do not reach the issues raised in defendant's other point.

As the evidence is insufficient to support defendant's conviction of unlawful use of a weapon, the judgment is reversed and the case is remanded for the trial court to enter a judgment of acquittal on Count II and discharge defendant on that count, and for the trial court to consider the length of the term of probation on the marijuana sentence if that issue is properly presented to it.

RAHMEYER, P.J., and PARRISH, J., concur.