**STATE of Missouri, Respondent,**

v.

**Patrick COYNE, Appellant.**

No. ED 81728.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 24, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 13, 2003.

William G. Buchholz, Clayton, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joel A. Block, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Patrick M. Coyne ("Coyne") appeals the judgment on his conviction of one count of

unlawful use of a weapon in violation of section 571.030.1(1) RSMo (Supp.2001). Coyne claims that the trial court erred in failing to give an instruction which included language concerning the accessibility of the weapon, and that the court erred in denying his motion to suppress evidence concerning the weapon because it was the product of an unlawful search and seizure. Finding no error, we affirm.

On February 14, 2001, Coyne drove to a bar and restaurant called the Locker Room. He ate and drank with some friends. He left the Locker Room and decided not to drive his car. Coyne fell asleep in his car. Kathleen Ross ("Officer Ross"), a police officer with the City of Florissant, approached Coyne's vehicle around 3:15 a.m. While on patrol, she noticed the car in the relatively deserted parking lot behind the Locker Room. Coyne was sitting behind the wheel on the driver's side of the vehicle, and it appeared as though he was sleeping. The motor was running, and Officer Ross observed what appeared to be vomit on Coyne, in the seat around him and outside the car. She tapped on the window and Coyne woke up and rolled down the window. Officer Ross testified that she smelled a strong odor of intoxicating beverage inside the vehicle and on Coyne's breath. She asked Coyne to exit the car, and she saw him reach under the seat. Coyne informed Officer Ross that he was getting his shoes. According to Officer Ross, Coyne staggered when he left the vehicle and his eyes were glassy and red. He spoke with slurred speech. She formed the opinion that Coyne was intoxicated and arrested him. During her discussion with Coyne, Mark Hucker ("Sergeant Hucker"), a sergeant with the Florissant police department and Shaun Kummer ("Officer Kummer"), another officer, arrived at the scene to assist Officer Ross. Sergeant Hucker looked under the seat of Coyne's vehicle and saw a handgun but did not remove it. Sergeant Hucker informed Officer Ross that there was a weapon in the car and that she should search the suspect. After arresting Coyne, Officer Ross looked under the front seat and found an unloaded gun. She testified that it was within arm's reach under the drivers' seat. Coyne was charged with one count of unlawful use of a weapon and one count of driving while intoxicated. A motion to suppress evidence was filed March 21, 2002. In the motion, Coyne requested that "any and all articles seized" be suppressed. The motion was heard on April 4, 2002, and the court denied the motion. Trial began July 8, 2002, and the jury returned a verdict finding Coyne guilty of unlawful use of a weapon and not guilty on the driving while intoxicated count. Coyne filed a motion for new trial and motion for judgment of acquittal which was heard and denied. The trial court entered a judgment and sentence on August 23, 2002. The present appeal followed.

In his first point, Coyne asserts that the trial court erred in failing to submit an instruction to the jury which required them to make a finding as to the accessibility of the gun. Coyne argues that there was a question of fact as to the location and accessibility of the gun. As support for his argument, Coyne claims that the testimony of the location of the gun was not consistent; therefore, the exact location of the gun was not established. He also cites to his own testimony that the gun was not easily accessible.

Coyne submitted a proposed instruction which required the jury to find "that the firearm was readily accessible," in order to find him guilty of the unlawful use of a weapon charge. He argues that the notes on use for MAI–CR 331.20, the instruction for unlawful use of a weapon, require this language to be used where evidence exists

that the weapon was not readily accessible. The court refused the instruction and submitted one that did not require the jury to make a finding that the weapon was accessible to Coyne.

■■■ In order for an appellate court to reverse due to instructional error, there must be both error in submitting the instruction and resulting prejudice to the defendant. *State v. Westfall,* 75 S.W.3d 278, 280 (Mo. banc 2002). To determine whether the omission of language from an instruction constitutes error, we view the evidence in the light most favorable to Coyne. *Id.* However, even when the evidence in the present case is viewed in such a light, it does not support a finding of error in omitting the language from the instruction.

■■■ The essential elements of the offense of unlawful use of a weapon are "the knowing concealment and accessibility of a functional lethal weapon." *State v. Davis,* 71 S.W.3d 659, 666 (Mo.App.2002); *(quoting State v. Purlee,* 839 S.W.2d 584, 590 (Mo. banc 1992)). "A weapon is accessible if it is in such close proximity to the accused as to be within his easy reach and convenient control." *State v. Purlee,* 839 S.W.2d at 590. In the present case, the gun was found under the drivers' seat of Coyne's car. Although Coyne testified that the gun was not easily accessible, he also testified that if he bent over and reached under the seat the gun was reachable. A weapon beneath the seat of and reachable by an occupant of a vehicle can be considered to be within the accessibility and control of a defendant. *See e.g. State v. Shaw,* 647 S.W.2d 612, 614 (Mo.App. 1983) (court found that the weapon concealed beneath the passenger seat in which the defendant was sitting was close enough to defendant to be considered within his control). The evidence clearly shows that the gun was found under the driver's seat

of Coyne's vehicle. Coyne was sitting in the driver's seat, behind the wheel. Given the fact that the evidence is uncontroverted that the weapon was under the seat and reachable by Coyne if he bent over, there was no error in omitting the language concerning accessibility of the gun from the jury instruction. Point denied.

■ In his second and final point, Coyne claims that the trial court erred in denying his motion to suppress any evidence concerning the weapon found in the car because it was the product of an unlawful search and seizure. Coyne asserts that the search was not incident to a lawful arrest. Coyne argues that Sergeant Hucker, not Officer Ross, the arresting officer, discovered the gun. According to Coyne, the timing of the search by Sergeant Hucker relative to the time of the arrest is unclear. He also claims that Sergeant Hucker's independent action in searching the vehicle was without probable cause or knowledge of an arrest. Additionally, Coyne argues that he was removed from the car, and once he was removed, there was no reason to search the vehicle.

■■■ Generally, a trial court's ruling on a pretrial motion to suppress cannot be asserted as a claim of error on appeal because the pretrial motion to suppress and the admission of the challenged evidence at trial are two separate procedures. *State v. Williams,* 9 S.W.3d 3, 11 (Mo.App. 1999). "Absent an objection at trial to the admission of the evidence challenged in the motion, the issue is not preserved for appellate review." *Id.* In the present case, counsel for Coyne filed a motion to suppress any evidence resulting from the search of his vehicle. However, counsel failed to object at trial to the introduction of such evidence on the grounds that such evidence was the product of an illegal search and seizure. Therefore, we review

the admission of the challenged evidence at trial for plain error. We will reverse for plain error only where the ruling of the trial court results in a miscarriage of justice or a manifest injustice. *State v. Smith*, 11 S.W.3d 733, 738 (Mo.App.1999).

Where an officer makes a lawful custodial arrest of an occupant of a vehicle, the officer may, contemporaneously, search the passenger compartment of the vehicle. *State v. White*, 835 S.W.2d 942, 953 (Mo.App.1992); (*quoting New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981)). In the present case, Officer Ross arrested Coyne for driving while intoxicated. Coyne argues that the timing of the search relative to the arrest is at issue, and therefore, the search did not constitute one incident to arrest because it occurred roughly the same time as the arrest. We do not need to address Coyne's arguments concerning whether the search was incident to a lawful arrest because the weapon would have been discovered through the inventory search of the vehicle.

It has been determined that "where law enforcement personnel would ultimately or inevitably have discovered evidence, the evidence is admissible notwithstanding a constitutionally invalid search." *State v. Rutter*, 93 S.W.3d 714, 726 (Mo. banc 2002); (citing *State v. Milliorn*, 794 S.W.2d 181, 184 (Mo. banc 1990)). This doctrine allows illegally seized evidence to be admitted where the state proves by a preponderance of the evidence that certain standard procedures of the local police would have been utilized and that those procedures would have resulted in the inevitable discovery of the challenged evidence. *Id.* This cannot involve speculation, and it must be focused upon demonstrated facts which are capable of verification and impeachment. *Id.*

Here, Officer Kummer testified that when he arrived to assist Officer Ross with the arrest, he was instructed to conduct an inventory search of Coyne's vehicle prior to towing. Officer Kummer stated that an inventory search was done in order to catalog and inspect vehicles for any items of value so a record can be made of the items. The search was conducted beginning in the passenger compartment and progressing through the interior of the vehicle to the trunk. It included a search under the seats of the car. According to Officer Ross, the inventory search of a vehicle is a normal procedure prior to towing in order to assure that any valuables contained in the car are recorded and possibly brought to the station to be returned to the suspect. This standard procedure was utilized and would have resulted in the inevitable discovery of the gun had it not been discovered earlier by Officer Hucker and Officer Ross. We find no manifest injustice or miscarriage of justice and no plain error. Point denied.

The judgment of the trial court is affirmed.

MARY R. RUSSELL, P.J., and BOOKER T. SHAW, J., concur.